**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND | ) | |
| SOUTHWEST AREAS PENSION FUND; | ) | |
| and ARTHUR H. BUNTE, JR., as Trustee, | ) | |
| | ) | Case No. 16-8439 |
| *Plaintiffs*, | ) | |
| | ) | Judge |
| v. | ) | |
| | ) | Magistrate Judge |
| PHBC, LLC, a Michigan limited liability company; | ) | |
| ML LAND COMPANY, L.L.C., a Michigan | ) | |
| Limited liability company; L & L LAND | ) | |
| COMPANY, LLC f/k/a L & L LAND COMPANY | ) | |
| LIMITED PARTNERSHIP, a Michigan limited | ) | |
| liability company; and MICHAEL LAUTH, | ) | |
| an individual, | ) | |
| *Defendants*. | ) | |

## COMPLAINT

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Arthur H. Bunte, Jr., one of its present trustees, for a cause of action against Defendants allege as follows:

## JURISDICTION AND VENUE

1.  This is an action for collection of withdrawal liability, interest, and penalties incurred by an employer as a result of a withdrawal from a multiemployer pension plan.

2.  This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq*. This Court has jurisdiction over this action under sections 502(e), 502(f), and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c).

3.  Venue lies in this Court under sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), because the Central States, Southeast and Southwest Areas

Pension Fund (the "Pension Fund") is administered at its principal place of business in Rosemont, Illinois.

## PARTIES

4.      The Pension Fund is a multiemployer pension plan within the meaning of sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3).

5.      Plaintiff Arthur H. Bunte, Jr. is a present trustee and fiduciary of the Pension Fund within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor of the Pension Fund within the meaning of section 4001(a)(10) of ERISA, 29 U.S.C. § 1301(a)(10). The Trustees administer the Pension Fund at 9377 West Higgins Road, Rosemont, Illinois.

6.      Pursuant to sections 502(a)(3) and 4301(a)(1) of ERISA, 29 U.S.C. §§1132(a)(3) and 1451(a)(1), the Trustees, by and through their designated trustee Arthur H. Bunte, Jr., are authorized to bring this action on behalf of the Pension Fund, its participants and beneficiaries for the purpose of collecting withdrawal liability.

7.      Defendant PHBC, LLC ("PHBC") is a limited liability company organized under the laws of the State of Michigan.

8.      Defendant ML Land Company, L.L.C. ("ML Land") is a limited liability company organized under the laws of the State of Michigan.

9.      Defendant L & L Land Company, LLC f/k/a L & L Land Company Limited Partnership ("L&L Land Company LLC") is a limited liability company organized under the laws of the State of Michigan.

10.      Defendant Michael Lauth is an individual who resides in the State of Michigan.

## FACTUAL BACKGRUOND

11.     Non-party Port Huron Building Supply Co. ("Port Huron") is a corporation organized under the laws of the State of Michigan.

12.     During all relevant times, Port Huron was bound by collective bargaining agreements with certain Teamsters local unions under which Port Huron was required to make contributions to the Pension Fund on behalf of certain of its employees.

13.     On or about December 31, 2012, Michael Lauth directly or indirectly owned at least 80% of the total combined voting power of all classes of outstanding stock entitled to vote or at least 80% of the total value of outstanding shares of all classes of stock of Port Huron.

14.     On or about December 31, 2012, Michael Lauth directly or indirectly owned at least 80% of the membership interest in PHBC and/or at least 80% of the profits interest or capital interest in PHBC.

15.     On or about December 31, 2012, Michael Lauth directly or indirectly owned at least 80% of the membership interest in ML Land and/or at least 80% of the profits interest or capital interest in ML Land.

16.     On or about December 31, 2012, Port Huron, PHBC, ML Land, and all other trades and businesses under common control with Port Huron, including but not limited to all trades or business that would have been under common control on that date but for transactions voidable under Section 4212(c) of ERISA, 29 U.S.C. § 1392(c), were a group of trades or businesses under common control (the "Port Huron Controlled Group") and therefore constituted a single employer within the meaning of section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), and the regulations promulgated thereunder.

17.     The Port Huron Controlled Group is the "employer" for purposes of the

determination and assessment of withdrawal liability under Title IV of ERISA.

18.     As a result of a decline in Port Huron's contributions to the Pension Fund, the Pension Fund determined that on or about December 31, 2012, the Port Huron Controlled Group effected a "partial withdrawal" from the Pension Fund within the meaning of 4205(a)(1) of ERISA, 29 U.S.C. § 1385(a)(1).

19.     As a result of the partial withdrawal, the Port Huron Controlled Group incurred withdrawal liability to the Pension Fund, jointly and severally, in the principal amount of $2,114,166.93 (the "Withdrawal Liability"), as determined under section 4201(b) of ERISA, 29 U.S.C. § 1381(b).

20.     During all relevant times, Michael Lauth was the President of Port Huron.

21.     On or about May 21, 2014, the Port Huron Controlled Group, through Port Huron, received a notice and demand (the "Notice and Demand") for payment of the Withdrawal Liability pursuant to sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1).

22.     On or about July 9, 2014, Michael Lauth, on behalf of Port Huron, sent a letter to the Pension Fund regarding the Withdrawal Liability.

23.     On or about August 14, 2014, Michael Lauth, on behalf of Port Huron, sent another letter to the Pension Fund, this time requesting review of the Withdrawal Liability pursuant to section 4219(b)(2)(A) of ERISA, 29 U.S.C. 1399(b)(2)(A) (the "Request for Review").

24.     On or about September 11, 2014, the Port Huron Controlled Group, through Port Huron, received a notice (directed to Michael Lauth) from the Pension Fund pursuant to section 4219(c)(5)(A) of ERISA, 29 U.S.C. § 1399(c)(5)(A), advising that its Withdrawal Liability payment was past due, and forewarning the Port Huron Controlled Group of the consequences of

its failure to pay such withdrawal liability (the "Past Due Notice"). In addition, on or about September 11, 2014, the Port Huron Controlled Group, through Port Huron, received a letter from the Pension Fund along with the aforementioned notice further explaining the Withdrawal Liability.

25.     On September 19, 2014, Michael Lauth, on behalf of Port Huron, once again sent a letter to the Pension Fund regarding the Withdrawal Liability.

26.     The Port Huron Controlled Group did not timely initiate arbitration pursuant to section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1).

27.     The Port Huron Controlled Group failed to make the required withdrawal liability payments to the Pension Fund and fell into default within the meaning of section 4219(c)(5)(A) of ERISA, 29 U.S.C. 1399(c)(5)(A).

28.     On March 26, 2015, the Pension Fund filed suit against Port Huron for the Withdrawal Liability in the United States District Court for the Northern District of Illinois in an action styled *Central States, Southeast and Southwest Areas Pension Fund, et al. v. Port Huron Building Supply Co.*, No. 15-cv-2559 (the "Lawsuit").

29.     On April 16, 2015, Port Huron was served with the summons and complaint in the Lawsuit via service upon Michael Lauth.

30.     On February 16, 2016, the court in the Lawsuit granted the Pension Fund's motion for summary judgment and instructed the Pension Fund to submit documents establishing all amounts owed to the Pension Fund in the Lawsuit.

31.     On March 31, 2016, the court entered a judgment in the amount of $2,751,654.85 in favor of the Pension Fund against Port Huron in the Lawsuit (the "Judgment").

32.     As of this date, the Judgment has not been satisfied.

33.     All members of the Port Huron Controlled Group, including all  trades or businesses under common control with Port Huron within the meaning of 4001(b)(1) of ERISA, 29 U.S.C. 1301(b)(1), and the regulations promulgated thereunder, are jointly and severally liable to the Pension Fund for the Withdrawal Liability.

## COUNT I

## DEFAULTED WITHDRAWAL LIABILITY AGAINST
## PHBC AND ML LAND

34.     Plaintiffs restate in their entirety paragraphs 1 through 34 of this Complaint as paragraph 35 of this Count I.

35.     PHBC, a limited liability company, filed its Articles of Organization with the Michigan Department of Licensing and Regulatory Affairs in January 2006.

36.     On or about December 31, 2012, PHBC was in the business of leasing several parcels of commercial real estate to Port Huron.  Real estate leased by PHBC to Port Huron has included a commercial office, a retail store, a lumber storage facility, a cement block plant, a ready mix plant, and a parking lot.

37.     PHBC has filed annual statements with the Michigan Department of Licensing and Regulatory Affairs each year from 2007 through 2016.

38.     ML Land, a limited liability company, filed Articles of Organization with the Michigan Department of Licensing and Regulatory Affairs as M & G Land Company, L.L.C. in February 1997.

39.     In August 2000, ML Land filed a Certificate of Amendment to its Articles of Organization with the Michigan Department of Licensing and Regulatory Affairs, changing its name from M & G Land Company, L.L.C. to ML Land Company, L.L.C.

40.     On or about December 31, 2012, ML Land was in the business of leasing and/or developing residential and commercial real estate.

41.     Each year from 1997 through 2016, ML Land f/k/a M & G Land Company, L.L.C. has filed annual statements with the Michigan Department of Licensing and Regulatory Affairs.

42.     Port Huron, PHBC, and ML Land all share the same registered address, 3555 Electric Avenue in Port Huron, Michigan, which is owned by PHBC.

43.     PHBC and ML Land, as trades or businesses under common control with Port Huron, are jointly and severally liable for the Withdrawal Liability.

**WHEREFORE**, Plaintiffs request the following relief:

(a)     A judgment against PHBC and ML Land, jointly and severally, and on behalf of Plaintiffs, pursuant to sections 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b), for --

   (i)     $2,114,166.93 in withdrawal liability;

   (ii)    interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

   (iii)   an amount equal to the greater of interest on the unpaid withdrawal liability or liquidated damages of 20% of the unpaid withdrawal liability; and

   (iv)    attorney's fees and costs.

(b)     Post-judgment interest computed and charged on the entire judgment at an

annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually; and

(c)     Such further or different relief as this Court may deem proper and just.

## COUNT II

## DEFAULTED WITHDRAWAL LIABILITY
## AGAINST L & L LAND COMPANY LLC AND MICHAEL LAUTH

44.     Plaintiffs restate in their entirety paragraphs 1 through 34 of this Complaint as paragraph 45 of this Count II.

45.     From before 2000 through at least March 2016, Michael Lauth has served as President of Port Huron.

46.     From before 2000 through December 31, 2012, Michael Lauth directly or indirectly owned at least 80% of the total combined voting power of all classes of outstanding stock entitled to vote or at least 80% of the total value of outstanding shares of all classes of stock of Port Huron.

47.     L & L Land Company LLC is formerly known as L & L Land Company Limited Partnership, a limited partnership that was organized under the laws of the State of Michigan.

48.     From before 2000 through December 2009, L & L Land Company Limited Partnership was in the business of leasing several residential real estate properties regularly and continuously for the purpose of generating income or profit.

49.     From before 2000 through December 2009, Michael Lauth directly or indirectly owned at least 80% of the profits interest or capital interest in L & L Land Company Limited Partnership.

50.     Thus, for a period of time from before 2000 until around December 2009, L & L

Land Company Limited Partnership was a trade or businesses under common control with the Port Huron Controlled Group within the meaning of 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), and the regulations promulgated thereunder.

51.     During the period from May 2001 through December 2009, Michael Lauth was the general partner of L & L Land Company Limited Partnership.

52.     In December 2009, L & L Land Company LLC filed Articles of Organization and a Certificate of Conversion with the Michigan Department of Licensing and Regulatory Affairs converting L & L Land Company Limited Partnership into a limited liability company, L & L Land Company LLC (the "Conversion").

53.     Also in or around December 2009, Michael Lauth and his mother transferred portions of their interests in L & L Land (either as L&L Land Company Limited Partnership or L & L Land Company LLC) to Michael Lauth's sister (the "Transfer"). Following the Transfer, Michael Lauth directly and indirectly owned less than 80% of the profits interest and capital interest in L & L Land Company Limited Partnership or less than 80% of the profits interest, capital interest or membership interest in L & L Land Company LLC.

54.     The Conversion and the Transfer had the effects of both removing L & L Land Company Limited Partnership n/k/a L & L Land Company LLC from the Port Huron Controlled Group and eliminating Michael Lauth's personal liability for the Withdrawal Liability, which personal liability he had by virtue of being the general partner of L & L Land Company Limited Partnership.

55.     After the Conversion and the Transfer, L & L Land Company LLC continued to conduct the same business of regularly and continuously leasing several residential real estate properties for the purpose of generating income or profit as had been performed by and with the

same purpose as L & L Land Company Limited Partnership.

56.     Indeed, L & L Land Company LLC is governed by an operating agreement, which provides that the purpose of the company is to engage in any activity for which limited liability companies may be formed under the limited liability act of Michigan, including real estate investment.

57.     At the time of the Conversion and the Transfer in or around December 2009, Michael Lauth, as President and majority owner of Port Huron, was aware of the impending Withdrawal Liability, as Port Huron had already made at least six separate requests to the Pension Fund for estimates with respect to withdrawal liability. Specifically, Port Huron requested estimates in January 2002, February 2006, January 2007, January 2008, April 2008 and February 2009. Port Huron also requested estimates after the Conversion and the Transfer in March 2011, August 2011, June 2013 and January 2014.

58.     A principal purpose of both the Conversion and the Transfer was to remove L & L Land Company Limited Partnership n/k/a L & L Land Company LLC from the Port Huron Controlled Group and to eliminate Michael Lauth's personal liability for withdrawal liability as L & L Land Company Limited Partnership's general partner.

59.     Pursuant to Section 4212(c) of ERISA, 29 U.S.C. § 1392(c), both the Conversion and the Transfer are to be disregarded in determining and collecting the Withdrawal Liability. Therefore, on or about December 31, 2012, L & L Land Company LLC f/k/a L & L Land Company Limited Partnership was a trade or business under common control with the Port Huron Controlled Group and jointly and severally liable for the Withdrawal Liability.

60.     Furthermore, and also for purposes of section 4212(c) of ERISA, 29 U.S.C. § 1392(c), Michael Lauth is still deemed to be the general partner of L & L Land Company

Limited Partnership, and personally liable for the debts of L & L Land Company Limited Partnership, including the Withdrawal Liability.

61.     By no later than July 9, 2014, Michael Lauth had actual knowledge of the Notice and Demand and the Withdrawal Liability, as evidenced by the letter dated July 9, 2014 that he submitted to the Pension Fund concerning the Withdrawal Liability.

62.     At the time Michael Lauth had knowledge of the Withdrawal Liability, he was the Managing Member of L & L Land Company LLC f/k/a L & L Land Company Limited Partnership as well as the President and sole shareholder of Port Huron.

63.     Accordingly, by no later than July 9, 2014, L & L Land Company LLC and L & L Land Company Limited Partnership, through Michael Lauth, had actual knowledge of the Notice and Demand and the Withdrawal Liability.

64.     By no later than September 11, 2014, Michael Lauth had actual knowledge of the Past Due Notice.

65.     Neither L & L Land Company LLC f/k/a L & L Land Company Limited Partnership nor Michael Lauth initiated arbitration with respect to the Withdrawal Liability.

66.     By no later than April 21, 2016, Michael Lauth had actual knowledge of the Judgment.

WHEREFORE, Plaintiffs request the following relief:

(a)     A judgment against Defendant L & L Land Company LLC and Michael Lauth, jointly and severally, and on behalf of Plaintiffs, pursuant to sections 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. 1132(g)(2) and 1451(b) for—

      i.     $2,114,166.93 in withdrawal liability;

      ii.     interest computed and charged at an annualized interest rate equal to two

percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

    iii.    an amount equal to the greater of interest on the unpaid withdrawal liability or liquidated damages of 20% of the unpaid withdrawal liability; and

    iv.    attorney's fees and costs.

(b)    Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually; and

(c)    Such further or different relief as this Court may deem proper and just.

Respectfully submitted,

/s/ Emily E. Gleason
Emily E. Gleason (ARDC #6298395)
CENTRAL STATES FUNDS
Law Department
9377 W. Higgins Road, 10th Floor
Rosemont, IL  60018
(847) 939-2343
egleason@centralstates.org

August 29, 2016                *COUNSEL FOR CENTRAL STATES*